IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENSION BENEFIT GUARANTY
CORPORATION,

   *Plaintiff*,

v.

MEMBERS FIRST FEDERAL CREDIT
UNION,

   *Defendant*.

Civil Action No. ELH-14-3226

**MEMORANDUM**

The Pension Benefit Guaranty Corporation ("PBGC"), a federal agency that administers and regulates the defined benefit pension plan insurance program established by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301 et seq., filed a petition in this Court on October 14, 2014.  ECF 1.  In the petition, PBGC sought an order to enforce an administrative subpoena issued on July 25, 2013, by PBGC to Members First Federal Credit Union ("MFFCU"), seeking various documents.  ECF 1.  MFFCU failed to respond and, as a result, PBGC resent the subpoena to MFFCU on May 7, 2014.  Again, MFFCU failed to respond.

By Order entered October 24, 2014 (ECF 12), this Court directed MFFCU to produce the records requested by PBGC within eleven (11) days of service of the Order.  *Id.*  Alternatively, the Court set a show cause hearing for November 12, 2014, directing respondent to appear at 2:30 p.m. "and show cause why it should not be held in contempt for failing to produce the information designated in [the Court's] Order."  ECF 12 at 2.  The Order was served on respondent on October 30, 2014.  ECF 14; 15-2.

The Court held a show cause hearing at about 2:30 p.m. on November 12, 2014. Counsel for PBGC was present. However, respondent failed to appear. Although MFFCU failed to appear at the show cause hearing on November 12, 2014, MFFCU belatedly produced the documents requested by PBGC's administrative subpoena. In particular, the documents were delivered by MFFCU to FedEx on November 12, 2014, and delivered by FedEx to PBGC the following day, November 13, 2014. *See* ECF 15 at 1.

PBGC has obtained the relief that is sought in its petition. ECF 1. Nevertheless, it has filed a motion asking the Court to hold respondent in contempt for failing to appear at the show cause hearing on November 12, 2014. And, it has also requested compensatory sanctions, in the form of attorney's fees and costs associated with the show cause hearing. *See* "PBGC's Motion That Respondent Be Held In Contempt And Order To Pay Compensatory Sanctions," ECF 15 ("Motion"). The Motion is supported by a Memorandum of Law (ECF 15-1) as well as multiple exhibits. *See* ECF 15-2 through ECF 15-8. The exhibits include a Declaration of Bruce H. James, Esquire, Senior Counsel in the Office of the General Counsel of PBGC and counsel of record in this case. The Motion is founded on 18 U.S.C. § 401.

MFFCU failed to respond to the Motion, and the time to do so has long expired. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

**Factual Background**

PBGC is the federal agency created by Title IV of the Employee Retirement Income Act of 1974, 29 U.S.C. §§ 1301-1461 (2012), to administer the defined benefit pension plan termination insurance program created under the Title. *See generally PBGC v. LPZ Corp.*, 496 U.S. 633, 637-38 (1990). Pursuant to ERISA, PBGC has broad investigatory authority

concerning matters under its jurisdiction, including authority to issue administrative subpoenas. 29 U.S.C. § 1342(b).

In this case, PBGC sought to trace and recover the overpayment of benefits mistakenly deposited into and withdrawn from an account at *Members First Federal Credit Union*. In particular, PBGC paid a monthly life annuity benefit to Reginald Williams, a participant under the Pension Plan of Bethlehem Steel (the "Plan"). Payments to Williams under the Plan should have ceased upon Mr. Williams's death on November 4, 2010. ECF 1 ¶¶ 11-13. However, PBGC did not learn of the death of Mr. Williams until March 9, 2011, *id.* ¶ 6, resulting in a benefit overpayment of $3,339.53, deposited to an MFFCU account. *Id.* ¶ 14. Because PBGC's efforts to reclaim the funds from the MFFCU account were unsuccessful, PBGC sought information from MFFCU as to the account in issue. *Id.* ¶¶ 16-21. PBGC sent MFFCU three letters inquiring about the account. ECF 1 ¶ 17. MFFCU did not respond.

Thereafter, PBGC issued an administrative subpoena to MFFCU on July 25, 2013, pursuant to 29 U.S.C. § 1303(a). *See* ECF 1 ¶ 18; ECF 1-2 (Administrative Subpoena). *See also* Declaration of David Smith (ECF 9) at ¶ 3-10. MFFCU failed to respond to PBGC's administrative subpoena. ECF 1 ¶ 19. Therefore, on May 7, 2014, PBGC resent the subpoena to MFFCU. ECF 1 ¶ 20. Delivery was successful. *Id.* ¶ 21. Again, MFFCU failed to respond. *Id.* ¶ 22.

As a result of MFFCU's disregard of the subpoena, PBGC initiated an enforcement action under 29 U.S.C. § 1303(c). *See* ECF 1. The summons and petition were served on MFFCU on October 27, 2014. *See* ECF 13; ECF 15-2.

In response, and as set forth earlier, I issued a show cause order on October 24, 2014, in which I scheduled a show cause hearing for November 12, 2014. *See* ECF 12. That Order was

served on MFFCU on October 30, 2014.  *See* ECF 14; ECF 15-2.  Without notice to the Court or to PBGC, MFFCU failed to appear at the show cause hearing.

However, on the day of the hearing, MFFCU put the documents in transit to PBGC via FedEx; they were delivered to PBGC the next day, November 13, 2014.  Notably, the cover letter with the documents is dated November 3, 2014 (*see* ECF 15-4).  But, the air bill attached to the FedEx envelope reflects that the package was not shipped until November 12, 2014, *i.e.*, the day of the show cause hearing.  *See* ECF 15-5.  Moreover, the package was not shipped until 3:00 p.m. on that date, *i.e.*, after the time set for commencement of the hearing.  *See* ECF 15-6.  The Court has no explanation for the gap between the date of the cover letter (11/3/14) and the date of delivery to FedEx (11/12/14).

### Discussion

PBGC asserts that although MFFCU has "finally delivered the documents requested by PBGC's subpoena more than 15 months ago, its failure to do so in a timely manner, especially after the court's October 24, 2014 Show Cause Order, and its failure to appear at the Show Cause Hearing, caused unnecessary expense to PBGC and to the court. . . ."  ECF 15-1.  Therefore, it asks the Court to "declare MFFCU in contempt of court so that the Court may order compensatory sanctions to repay PBGC for its expenses and reasonable attorneys fees."  *Id.*  As noted, MFFCU has not responded to the Motion.

In its proposed Order, PBGC relies on 18 U.S.C. § 401 as authority for an award of legal fees and costs.  Section 401 provides that a court has "the power to punish by fine or imprisonment . . . *at its discretion*, such contempt of its authority. . . ."  (Emphasis added).  Under the facts attendant here, I decline to hold MFFCU in contempt.  Therefore, this provision provides no authority for PBGC's request.

To be sure, MFFCU produced the documents requested in PBGC's administrative subpoena more than a year after the first administrative subpoena was issued. And, it did so only after the Court issued the Order docketed at ECF 12. Based on the date of service of my Order, had MFFCU produced the documents by November 10, 2014, it would have been in full compliance with my Order. But, MFFCU did not produce the requested documents until three days later.

Petitioner cites *Delgado v. Mann Bros. Fuel, Inc.*, 2012 WL 3201870 (E.D. Cal. 2012), a decision of Magistrate Judge Dennis Beck, in support of its request for a finding of civil contempt as well as the award of legal fees and costs. There, Judge Beck said: "The party moving for a finding of civil contempt must demonstrate by clear and convincing evidence that the alleged contemnor violated the court's order, and a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]." *Id.* (alteration in original) (internal quotation marks omitted). *Id.* at *1.

PBGC itself asserts that MFFCU has "purged its contemptuous behavior." ECF 15-1 at 6. Based on MFFCU's conduct in putting the documents in transit on the day of the show cause hearing, it appears to me that PBGC has not met its heavy burden to establish contempt. In this regard, I note that my Order (ECF 12) did not particularize the exact date for production of the records in lieu of appearance of the show cause hearing. Rather, the Order stated that MFFCU had eleven days from the date of service of the Order, but service at that time was an unknown date. Perhaps MFFCU thought that by putting the documents in transit to PBGC on the day of the hearing, it satisfied its obligation under the Order.

As indicated, based on respondent's contempt, PBGC claims entitlement to legal fees and costs for the "injuries [it] suffered" when MFFCU failed to appear at the show cause hearing. *Id.*

In particular, it seeks an award of legal fees of $1,400 and reimbursement for expenses for service of its pleadings as to the show cause hearing and for travel to Baltimore for the show cause hearing, totaling $391.60.  PBGC has also submitted documentation of its expenses.  *See* ECF 15-8.  As indicated, these expenses include service of process fees pertinent to the hearing as well as travel expenses.

Without question, PBGC's counsel travelled to Baltimore for a hearing because MFFCU lacked either the common sense or the common courtesy to notify PBGC (or the Court) that it was transmitting the documents to PBGC by FedEx and thus did not plan to appear at the hearing.  As a result, PBGC needlessly incurred travel expenses to attend the hearing in Baltimore.  In my view, it is reasonable to require MFFCU to reimburse PBGC for these travel expenses, totaling $136.60.

An Order follows.


Date:  May 18, 2015                                          /s/
                                                  Ellen L. Hollander
                                                  United States District Court